In the Matter of Edward F. LOVE, doing business as Love Sheet Metal Service, Appellant,

v.

A. S. MENICK, Trustee in Bankruptcy for the Estate of Edward F. Love, doing business as Love Sheet Metal Service, Appellee.

No. 19254.

United States Court of Appeals
Ninth Circuit.
Feb. 1, 1965.

Andrew Leoni, Slate & Leoni, Los Angeles, Cal., for appellant.

Frank M. Chichester, Los Angeles, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and PENCE, District Judge.

ELY, Circuit Judge:

The voluntary petition in bankruptcy was filed on October 4, 1962. For several years prior thereto, the bankrupt, appellant here, had maintained a life insurance policy with himself as the named insured and his wife as the beneficiary and for which he had paid, in monthly payments, an annual premium of $1,975.-80. Six or seven days before the petition was filed, the policy was surrendered in exchange for its net cash value of $1,222.36. On October 2, 1964, two days before the petition was filed, appellant, acting upon advice of counsel, deposited $1,000.00 of the money received from the policy surrender in a federal savings and loan association. This deposit was withdrawn twenty days later, one day before the first Meeting of Creditors, and replaced in a commercial banking account under the name of appellant's wife. Thereafter, the money was used for living expenses, as appellant was unemployed and possessed only of his wearing apparel and his household furniture.

The Referee in Bankruptcy, following a hearing, sustained the Trustee's refusal to declare the savings and loan deposit as being exempt under the provisions of Sections 7611 and 11000 of California's Financial Code.[1] The ruling was predicated upon the finding that the circumstances revealed the perpetration of actual fraud upon the Trustee and the creditors.

The Referee also rejected the suggestion, proffered by the Trustee's counsel during the hearing, that, on account of § 690.19 of the California Code of Civil

---

1. "§ 7611. Exemption from attachment of shares and dividends of associations issuing neither stock nor investment certificates: Limit. The shares of associations issuing neither stock nor investment certificates, and the dividends credited thereon are exempt from attachment or execution and proceedings supplementary thereto to the value of one thousand dollars ($1,000)."

"§ 11000. Rights, powers, and privileges available to federal associations and shareholders under laws of State. Every federal savings and loan association, in-

corporated under the provisions of the Home Owners' Loan Act of 1933, as now or hereafter amended, and the holders of shares or share accounts issued by any such association, respectively, have all the rights, powers, and privileges, and are entitled to the same exemptions and immunities granted, respectively, to savings and loan associations organized under the laws of this State and to the holders of investment certificates, membership shares, or guarantee stock of domestic associations."

Procedure,[2] the appellant might be entitled to an exemption of $541.28, same being a prorated sum reached by taking into account the maximum annual life insurance premium of $1,000.00 exempt under § 690.19, C.C.P., the recovered cash proceeds of $1,222.36, and the annual premium paid by appellant, which, according to the record, was $1,975.80, but which was mistakenly represented to the Referee and to the District Court as being $2,215.80.

Upon review, the District Court upheld the Referee's refusal to declare as exempt the $1,000.00 which had been deposited in the savings and loan association but, adopting the position again taken by Trustee's own counsel during the proceedings on review, allowed a "life insurance" exemption of $541.28. In making such allowance, the District Court, in its Order, "assumed" that the Referee's finding of actual fraud was correct.

Appellant's application for leave to appeal, filed under the provision of Section 24, sub. a of the Bankrupty Act and Rule 33 of this Court, was granted; hence, the issues are properly before us.

[1–3] We conclude that an exemption of $1,000.00, claimed under Sections 7611 and 11000, California Financial Code, should have been allowed. Exemption rights are to be determined upon the basis of conditions existing at the time of the filing of the bankruptcy petition. Myers v. Matley, 1943, 318 U. S. 622, 63 S.Ct. 780, 87 L.Ed. 1043, Georgouses v. Gillen, 24 F.2d 292 (9th Cir. 1928), Collier on Bankruptcy, 14th Ed., p. 823. Here, as of the time of the filing of the petition, $1,000.00 rested in a deposit which, under Sections 7611 and 11000, Financial Code, enjoyed an exempt status. The Bankruptcy Act specifically provides that the exemption laws of the states must be applied, 11 U.S.C. § 24, Barutha v. Prentice, 189 F.2d 29 (7th Cir. 1951), and the exemption statutes of California are applied with liberality. Lentfoehr v. Lentfoehr, 134 Cal.App.2d Supp. 905, 286 P.2d 1019 (1955), North British & Mercantile Ins. Co. v. Ingalls, 109 Cal.App. 147, 292 P. 678 (1930).

The evidence does not support the Referee's finding of fraud, proof of which must ordinarily be made by evidence which is "clear and convincing." Pittman v. Union Planters Nat. Bank & Trust Co., 118 F.2d 211 (6th Cir. 1941). Appellant complied with the advice of his attorney, and the deposit of money derived from surrender of an asset, a portion of which, absent surrender, would have already been exempt under the statute relating to life insurance, into an account of exempt quality, cannot be held, of itself, to constitute fraud. In re Dudley, 72 F.Supp. 943 (S.D.Cal. 1947), Goggin v. Dudley, 166 F.2d 1023 (9th Cir. 1948), Crawford v. Sternberg, 220 F. 73, at 76 (8th Cir. 1915).

Appellant relies upon In re Martin, 217 F.Supp. 937 (D.Oregon 1963), In re Majors, 241 F. 538 (D.Oregon 1917), and In re White, 221 F.Supp. 64 (N.D. Cal. 1963). The facts developed in the matter of *White*, supra, disclosed a sys-

2. "§ 690.19. [Same: Life insurance benefits.] All moneys, benefits, privileges, or immunities, accruing or in any manner growing out of any life insurance, if the annual premiums paid do not exceed five hundred dollars ($500), or if they exceed that sum a like exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges, and immunities so accruing or growing out of such insurance that said five hundred dollars ($500) bears to the whole annual premium paid.

"In addition to the foregoing, all moneys, benefits or privileges belonging to or inuring to the benefit of the insured's spouse or minor children growing out of life insurance purchased with premiums not exceeding five hundred ($500), or if such annual premiums exceeded that sum, a like exemption shall exist in favor of such persons which shall bear the same proportion to the moneys, benefits or privileges growing out of such insurance that five hundred dollars ($500) bears to the whole annual premiums paid."

tematic scheme on the part of partners in an already insolvent commercial enterprise to procure merchandise upon the credit of the enterprise and to convert the merchandise into cash for immediate purchase, prior to planned voluntary bankruptcy, of assets for which exemption would be claimed. The claimed exemption was properly disallowed under this Court's decision in Sampsell v. Anches, 108 F.2d 945 (9th Cir. 1939).

In the case of *Martin*, supra, the court found "substantive evidence in the record to support" the Referee's finding of "fraudulent intent and action" on the part of the bankrupt. At the same time, the court quoted and recognized "the prevailing rule" \* \* \* "\* \* \* that the purchase of exempt property by an insolvent debtor on the eve of bankruptcy will not, in itself, permit the trustee to disallow the claimed exemption \* \* \*." To harmonize the court's decision with its recognition of the force of *Dudley* and that which it called "the prevailing rule," we must assume that the record in *Martin* contained some quality of "substantive evidence" of fraudulent intent which we cannot find in the record of the case at hand.

As to In re Majors, supra, the facts, insofar as they relate to the acquisition of assets for which exemption was claimed, would seem to fit much more nearly the rule applied in Sampsell v. Anches, supra, and in In re White, supra.

 Finally, we believe that the District Court, in allowing an exemption which was suggested as being properly allowable under the provisions of § 690.-19, C.C.P., quoted in footnote #2, supra, was led into error. Since the statute, in express terms, requires, as a condition to the allowance of one-half of the maximum exemption, that the wife or minor children of the insured be named as beneficiary or beneficiaries, fair interpretation would indicate that its purpose was to afford some relatively small measure of direct protection, not to the insured debtor himself, but, more beneficently, to the intimate members of his family. Moreover, it has been held

that the question of exemption, *vel non*, is to be determined according to the "nature" or "character" of the property. In re Dudley, supra, 72 F.Supp. at 944—"nature," Security-First National Bank of Los Angeles v. Pierson, 2 Cal. 2d 63, 38 P.2d 784 (1934), (interpreting § 690.3, C.C.P.—"character"). Here, when appellant, prior to the filing of his petition, surrendered his life insurance policy for cash, property of exempt "nature" or "character" under 690.19 ceased to exist. We do not believe that the language "moneys \* \* \* accruing or in any manner growing out of any life insurance," as employed in the California statute relating to exemption of certain life insurance benefits, was intended to include proceeds recovered by the insured himself in exchange for a total surrender occurring before his filing of a voluntary petition in bankruptcy.

Appellant will be allowed his claimed exemption of $1,000.

Reversed.