## In re SILANSKY.
### No. 15000.

District Court, E. D. Pennsylvania.
Oct. 26, 1937.

J. Jerome Katz, of Philadelphia, Pa., for bankrupt.

Illoway & Fischer, of Philadelphia, Pa., for trustee.

MARIS, District Judge.

Specifications of objections to the discharge of the bankrupt were filed by the trustee and referred to a referee as special master for recommendation and report. He recommended that the first specification be sustained, that the second be dismissed, and that the bankrupt be denied his discharge. Petitions for review were filed by the bankrupt and by the trustee. While these are not appropriate to review a special master's findings and recommendations, they will be treated as exceptions to his report. Thus considered, they bring up for our consideration the propriety of the special master's recommendation with respect to each specification.

The first specification was that the bankrupt obtained property on credit by making and publishing a materially false statement in writing respecting his financial condition. In an opinion carefully reviewing the evidence, the special master found that the bankrupt had made and published a materially false statement in writing respecting his financial condition, that the false statement was issued by him for the

purpose of obtaining credit, and that he did obtain such credit on the strength of it. After a full review of the evidence, we are satisfied that this finding is supported thereby, and we therefore approve the recommendation of the special master that the first specification of objection be sustained.

The second specification was that. the bankrupt had transferred some of his property with intent to hinder, delay, and defraud his creditors. The undisputed facts upon which this specification was based were these: Prior to the bankruptcy the bankrupt had taken out an insurance policy with the Equitable Life Assurance Society of the United States, with his wife as beneficiary thereof. Likewise prior to the bankruptcy he had made a loan on the policy in the sum of $1,000. About two weeks prior to his bankruptcy, and at a time when he knew that he was insolvent, he withdrew from his business funds the sum of $1,000, which he paid over to the Assurance Society in payment of the policy loan.

The Pennsylvania Act of June 28, 1923, P.L. 884, § 1 (40 P.S. § 517) is as follows: "The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person, heretofore or hereafter made for the benefit of or assigned to the wife or children or dependent relative of such person, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after the passage of this act, whether or not the right to change the named beneficiary is reserved by or permitted to such person."

█ It is conceded that the insurance policy in question was, under this act, absolutely exempt from the claims of the bankrupt's creditors. This follows from the provision of section 6 of the Bankruptcy Act (11 U.S.C. § 24 [11 U.S.C.A. § 24]), that that act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months immediately preceding. The question raised by this specification is whether the payment by a bankrupt of loans on an exempt policy shortly before bankruptcy, at a time when he knew he was insolvent, was a transfer of his property with intent to hinder, delay, or defraud his creditors, within the meaning of section 14b(4) of the Bankruptcy Act, as amended (11 U.S.C. § 32(b) (4), 11 U.S.C.A. § 32

(b) (4). The conclusion of the special master was that the payment of the policy loan by the bankrupt, under the circumstances indicated, was not such a transfer, and he accordingly recommended that the second specification be dismissed. With his conclusion we are constrained to agree.

█ It may be conceded that the so-called policy loan was not a loan in the ordinary sense of that term, but merely an advance by the Assurance Society repayable only at the bankrupt's option. The payment by the bankrupt was, therefore, not a payment of existing indebtedness. It was, however, a payment intended to increase the amount payable under the insurance policy to the bankrupt's wife as beneficiary. Essentially it was an exchange of nonexempt property for property which was exempt from the claims of creditors. It has been held that the conversion of nonexempt property into exempt property by an insolvent is in the absence of extrinsic fraud not a transfer with intent to hinder, delay, or defraud creditors. Forsberg v. Security State Bank (C.C.A.) 15 F.(2d) 499, 502, 49 A.L. R. 913. In the case just cited, the Circuit Court of Appeals for the Eighth Circuit said: "We find in the record no evidence that the bankrupt was actuated by any fraudulent purpose, unless such purpose should be implied from his intentional conversion of nonexempt assets into exempt assets. In our opinion no such implication exists. We think that, before the existence of such fraudulent purpose can be properly found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose."

To hold that a bankrupt should be denied his discharge because, while insolvent, he had intentionally converted nonexempt cash into additional exempt insurance, would be to defeat the purpose of the Pennsylvania Act which grants an absolute exemption of amounts payable under life insurance policies, regardless of whether the payments made thereon by the bankrupt were made with intent to defraud creditors. It is clear that the policy of the Pennsylvania law is to provide an absolute exemption of the proceeds of insurance policies for the benefit of the insured's wife, children, and dependent relatives. This class is to be protected, if necessary, at the expense of the insured's creditors since, as we have seen, the Pennsylvania Act does

not restrict the exemption to policies not procured in fraud of creditors.

It would undoubtedly be otherwise if, as is the case with the New York Exemption Law, payments made on insurance policies with intent to defraud creditors were not exempt. In re Hirsch (D.C.) 4 F.Supp. 708, 711. In the case just cited, however, Judge Goddard of the District Court for the Southern District of New York clearly pointed out the distinction. In referring to Forsberg v. Security State Bank, supra, and First National Bank of Humboldt v. Glass (C.C.A.) 79 F. 706, he said: "But they are not applicable, for in those cases the property acquired was absolutely exempt under state statutes, while in the case at bar the statute expressly provides that no exemption is created when the payment is made with intent to defraud creditors."

It must accordingly be held that the payment by the bankrupt of the loan upon his policy was not a transfer made with intent to hinder, delay or defraud creditors within the meaning of section 14b(4) of the Bankruptcy Act (as amended, 11 U.S.C.A. § 32 (b) (4).

The exceptions to the report of the special master are dismissed, and his report is confirmed.